# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DENNIS W. STRUTTON, <br> MARK A. MURRELL, <br><br> Plaintiff(s), <br><br> vs. <br><br> LINDA MEADE, et al., <br><br> Defendant(s). | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 4:05CV02022 ERW <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendants' Motion To Dismiss Second Amended Complaint [doc. #57]. A hearing was conducted before the Court on January 8, 2007. Defendants move dismissal of all of Plaintiffs' claims under Fed.R.Civ.P. 12 (b)(1), 12 (b)(6) and 12 (e).

**I. BACKGROUND**

Plaintiffs are involuntarily civilly committed to the Department of Mental Health ("DMH") under Missouri's Sexually Violent Predator Act ("SVPA"), Mo.Rev.Stat.. §§ 632.480 *et seq.,* confined at the time of initiating this lawsuit at the Missouri Sexual Treatment Center ("MSOTC"), Farmington, Missouri. In general terms, the four count Second Amended Complaint alleges in Count I, that Individual Defendants developed rules, regulations policies and practices regarding the imposition of punishment arising from treatment decisions made by Individual Defendants, all violative of Plaintiffs' federal and state constitutional rights to procedural and substantive due process; in Count II, Plaintiffs attempt to state a cause of action

1

under 42 U.S.C. § 1983 against Individual Defendants for damages; in Count III, Plaintiffs charge an "as applied" challenge to SVPA; and Count IV asseverates denial of constitutional rights to refuse treatment. Defendants are Linda Meade, psychologist at the MSOTC; Martha Bellew-Smith, Chief Clinical Director at the MSOTC; Mary Weiler, a licensed clinical social worker at the MSOTC; Jonathan Rosenboom, a licensed psychologist at the MSOTC; Rebecca Janine Semar, acting Chief Operating Officer at the MSOTC; Allan Blake, Chief Executive Officer and the Chief Operating Officer at the MSOTC ("Individual Defendants"); and the Missouri Department of Mental Health ("DMH").

Linda Meade is sued in her official and individual capacity. Plaintiffs allege that she, in all respects acting under color of state law, directly and personally created policies and procedures at MSOTC to deprive plaintiffs of their rights, privileges and immunities; that she made numerous individual treatment and other decisions related to Plaintiffs to deprive Plaintiffs of their rights, privileges and immunities secured to Plauintiffs by the federal Constitution; that she was a member of the Spiritual Committee at MSOTC and she violated Plaintiffs' rights and privileges secured under the Federal Constitution, and in all respects, acted wilfully, maliciously, with evil motive and intent and with reckless and callous indifference to Plaintiffs' federally protected rights.

Plaintiffs sue Martha Ballew-Smith in her official and individual capacity. They allege that in all respects, acting under color of state law, she was a member of the Spiritual Committee at MSOTC and directly participated in preparing and creating the privilege, token, and level procedures at MSOTC; that she made numerous individual treatment and other decisions related

to Plaintiffs that violated Plaintiffs' rights, privileges and immunities secured to them by the federal Constitution, and in making those decisions, she acted wilfully, maliciously, with evil motive and intent and with reckless and callous indifference to Plaintiffs' federally protected rights.

Mary Weiler is likewise sued in her official and individual capacity.  Plaintiffs charge that in all respects, acting under color of state law,  she directly and personally participated in preparing and creating the privilege, token, and level procedures at MSOTC; that she made numerous individual treatment and other decisions related to Plaintiffs that violated the rights, privileges and immunities secured to Plaintiffs by the Federal Constitution, and, in making these decisions, she acted wilfully, maliciously, with evil motive and intent and with reckless and callous indifference to Plaintiffs' federally protected rights.

Jonathan Rosenboom is also sued in his official and individual capacity.  Plaintiffs say that he, acting under color of state law, directly participated in treatment and punishment decisions that deprived Plaintiffs of the rights, privileges and immunities secured to them by the Federal Constitution. They claim he acted wilfully, maliciously, with evil motive and intent and with reckless and callous indifference to Plaintiffs' federally protected rights.

Plaintiffs sue Rebecca Janine Semar in her official and individual capacity, alleging she acted under color of state law and directly and personally participated in the creation and amendments to the privilege, token, and level procedures: that she made numerous individual treatment and other decisions relating o Plaintiffs that violated Plaintiffs' rights, privileges and immunities secured to Plaintiffs under the federal Constitution; that she made numerous individual

"treatment" and other decisions relating to Plaintiffs that violated Plaintiffs' rights, privileges and immunities secured to them by the Federal Constitution; that she was a member of the Spiritual Committee at MSOTC that further violated Plaintiffs' rights and privileges secured under the Federal Constitution; and she acted willfully and maliciously, with evil motive and intent, and with reckless and callous indifference to Plaintiffs' federally protected rights.

Plaintiffs allege that Alan Blake directly and personally participated in the creation, preparation, and amendments to the privilege, token and level procedures; that he made numerous individual "treatment" and other decisions relating to Plaintiffs under color of state law that violated the rights, privileges and immunities secured to Plaintiffs by the Federal Constitution; that he was a member of the Spiritual Committee at MSOTC and violated Plaintiffs' rights and privileges secured under the Federal Constitution. Plaintiffs are also alleging that he acted willfully and maliciously, with evil motive and intent, and with reckless and callous indifference to Plaintiffs' federally protected rights.

As to the DMH, Plaintiffs allege that it is a Missouri governmental agency, with its principal place of business in Jefferson City, Missouri and does now, and at all times material to this action did, operate the MSOTC, in the County of St. Francois, State of Missouri.

Strutton served seven years in the Missouri Department of Corrections until October 24, 2002, when he was detained at the MSOTC. On August 18, 2005, he was committed to the DMH as a sexually violent predator by the Jackson County Probate Court under Mo.Rev.Stat. § 632.489.[1] From December 2003 until December 2005, Strutton was a resident of Hoctor-3 at

---

[1]This section provides for a probable cause determination after a hearing and for commitment to the DMH. Mr. Myers, Assistant United States Attorney, states that Mr. Strutton

MSOTC where a token system is in place so that negative behavior results in denial of tokens, which redeem recreation time, books, canteen services or other forms of recreation.

Plaintiff Murrell was released from the Missouri Department of Corrections in April, 2000, and was admitted to MSOTC as a detainee. On March 3, 2005, after a probable cause hearing, Murrell was declared to be a sexually violent predator as defined under Mo.Rev.Stat. §632.480[2] and was civilly committed to the DMH MSOTC facility.

## II.  DISCUSSION

Plaintiffs claim violation of rights, under Article I, § 10 and the First, Fifth and Fourteenth Amendments of the United States Constitution, violation of rights guaranteed under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*

COUNT I

Plaintiffs claim constitutional violations by being punished by confinement to the "Time Out Table" or the "Restriction Table" for lengthy periods of time so that they could not go to their rooms to watch television or participate in activities, or talk to residents or staff as punishment for their behavior and were given no review of their alleged violations before punishment was imposed, nor did they receive meaningful review subsequent to the imposition of punishment. Punishment consisted of the deprivation of tokens, which were necessary in order to "purchase" television time, a book from the library cart or their own property, canteen goods,

---

stipulated to his commitment.

[2]This is a definition section of the Sexually Violent Predators Civil Commitment Statute.

cigarettes, and the ability to make telephone calls, to receive packages, play games, have photos in their room, recreation time, or receive visitors.

Plaintiffs claim that Murrell has been placed in the highly restrictive Intensive Intervention Unit, without any action, plan, or indication what he must do to move off of the ward, or how long he will be there. Plaintiffs say that if they have a grievance that their rights have been violated, they must go through a "special system" of dealing with grievances, because they have allegedly filed more than three grievances which "have no merit" in a 12-month period. Plaintiffs therefore are not even given the normal grievance standards put in place by DMH, are punished for claiming that they are being denied their legal rights, and therefore are not given fair and adequate due process.

Plaintiffs claim contact visits are not allowed for Plaintiffs, and private visiting facilities are rarely provided. They state that they are not allowed to leave designated areas, and are confined to inadequately small spaces for lengthy periods of time. Plaintiffs complain that they are not given access to adequate treatment.[3] They say that the limited treatment provided is often cancelled. Plaintiffs have also been required to repeat classes because new classes are not given. Plaintiffs claim inadequacy of recreational activities or supplies. Their access to books, television, exercise equipment, games, or other activities are so limited that they are forced to sit for hours per day with nothing to do. They allege that they are improperly and excessively restricted in the amount of personal property to which they may have, and, in fact, the property they may have at MSOTC is much more restrictive than the property allowed in even maximum security prisons.

---

[3] Plaintiffs do not here specify the type of treatment for which they are deprived.

They state that there are no opportunities for employment inside or outside of MSOTC, and they are not given adequate classes, training, or experience for the skills necessary to be employed outside of the DMH system.

Plaintiffs believe that the conduct of Defendants in imposing these conditions of confinement have deprived, and continues to deprive Plaintiffs of due process of law. Under Count I, Plaintiffs seek a declaratory judgment that conduct, conditions at MSOTC and treatment described in Count I violated the Due Process claims of the Missouri and United States Constitutions.

## COUNT II

Under Count II, Plaintiffs claim violation of freedom of religious exercise under the Protection of Religious Exercise of Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*,[4]

---

[4]§2000cc-1. Protection of religious exercise of institutionalized persons.

(a) General rule
No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling government interest; and
(2) is the least restrictive means of furthering that compelling governmental interest.

(b) Scope of application

This section applies in any case in which–

(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or
(2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with

and the First Amendment. Plaintiffs claim to be practitioners of the Wicca faith, and that they suffer substantial burdens in the exercise of that faith, including harassment and discrimination in the exercise of their nontraditional faith; denial of access to religious literature; denial of the ability to maintain their religious text; denial of meaningful access to their religious circle in order to maintain it; requirement that they express beliefs or participate in treatment that is contrary to their sincerely held beliefs; denial of the same opportunities for group worship that are granted to adherents of other religions; and that religious ceremonial items that are substantially identical to those that the adherents of other religions are permitted are withheld from them.

Plaintiffs believe that Defendants' conduct has substantially burdened Plaintiffs' freedom of religious exercise, and under Count II, Plaintiffs seek a declaratory judgment that conduct, conditions and treatment described in Count II violates the First Amendment to the United States Constitution, the RLUIPA and Article I, § 5 of the Missouri Constitution.

## COUNT III

Plaintiffs allege that they are indefinitely confined[5] in the MSOTC pursuant to SVPA, and that the Individual Defendants have developed rules, regulations, policies and practices relating to the SVPA, but rather than providing treatment and conditions of confinement that are relevant to purposes of Plaintiffs' confinement, all defendants use MSOTC as a means of warehousing and punishing residents. Plaintiffs state that they are denied meaningful health care treatment to

---

Indian tribes.

[5] The SVPA provides for annual examination of mental condition and review of status of committed persons and a petition process for discharge.

provide them with realistic opportunity for material improvement of their mental conditions so they can be released. Under Count III, Plaintiffs ask for a declaratory judgment that conduct, conditions and treatment described in Count III violates the Ex Post Facto Clause and the Double Jeopardy Clause of the United States Constitution and the Missouri Constitution,[6] and Plaintiffs are deprived of Equal Protection Clause protection and Due Process Protection under the United States Constitution.

## COUNT IV

Plaintiffs believe they are lawfully entitled to refuse treatment provided under rules, regulations, policies and practices developed by Individual Defendants, and when Plaintiffs refuse treatment, they are punished with a reduction of the base number of tokens, losing basic rights and privileges. Similarly, upon refusal to take proffered prescribed drugs, tokens are denied to them. Plaintiffs say that by engaging in this action against Plaintiffs, Defendants failed to abide by procedures required by the Missouri and United States Constitutions in protecting their interests in refusing treatment.

Under Count IV, Plaintiffs ask for a declaratory judgment that the conduct, conditions and treatment described in Count IV violates the Due Process Clause of the United States Constitution and the Missouri Constitution Due Process Clause.

Finally, Plaintiffs seek a permanent injunction against Defendants to require them to submit and implement a plan correcting the constitutional and statutory deficiencies alleged in the Complaint. Plaintiffs want an award of compensation and punitive damages against Individual

---

[6] In their brief, Plaintiffs confess under *Seling v. Young,* 531 U.S. 250, 267 (2000) that the *Ex Post Facto* and Double Jeopardy claims must be and are withdrawn.

Defendants under 42 U.S.C. § 1983 and an award of reasonable attorney fees under 42 U.S.C. § 1988 and 42 U.S.C. § 2000cc.

### III. LEGAL STANDARD

The standards governing motions to dismiss are well-settled. A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of a claim entitling him or her to relief. *Breedlove v. Earthgrains Banking,* 140 F.3d 797, 799 (8th Cir. 1998)(citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When deciding a motion to dismiss under Rule 12(b)(6), the Court must assume that all material facts alleged in the complaint are true. *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633 (1999). The Court must view all facts and inferences in the light most favorable to the non-moving party and "may dismiss the complaint only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint." *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1976).

### IV. QUALIFIED IMMUNITY

Individual Defendants raise the defense of qualified immunity which shields government officials from suit, unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known. *See Yowell v. Combs,* 89 F.3d 542, 544 (8th Cir. 1996) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates a clearly established statutory or constitutional right. *Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). Qualified immunity is more than a defense; it grants government officials the right not to be subject to the burden of trial at all. To prove that a clearly established right has been infringed, a plaintiff must do more than allege that an abstract right has been violated. A plaintiff must make a particularized showing that a reasonable official would understand that what he is doing violated that right or that in the light of preexisting law the unlawfulness of the action was apparent. *Hopkins v. Saunders*, 93 F.3d 522, 525 (8th Cir. 1996) (quoting *Anderson v. Creighton,* 483 U.S. at 640). Given the facts most favorable to Plaintiffs, to withstand the application of qualified immunity, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated the statutory or constitutional right. *Liebe v. Norton,* 157 F.3d 574, 577 (8th Cir. 1998). The doctrine gives ample room for mistaken judgments, but does not protect the plainly incompetent or those who knowingly violate the law. The lynchpin of qualified immunity is the public official's objective reasonableness. *Bagby v. Brondhaver,* 98 F.3d 1096, 1098 (8th Cir. 1996).

In analyzing all of Plaintiffs' statutory and constitutional claims against the Individual

Defendants, and whether such Defendants shall prevail on their claims for damages, under the doctrine of qualified immunity, the Court finds (1) that Plaintiffs have indeed asserted a violation of a statutory right and constitutional rights which they claim were violated; and (2) that the rights Plaintiffs claim were protected by statutory and constitutional provisions at the time they claim their rights were violated were not clearly established. The Court is not persuaded by Plaintiffs' reliance on *Hydrick v. Hunter,* 466 F.3d 676 (9th Cir. 2006) where the Court of Appeals observed, "[w]e note again, the special difficulty of deciding the motion to dismiss a Defendant on qualified immunity grounds at this stage." *Id.* at 686. In that case, the Court stated that the parties had already engaged in discovery and "it appears that discovery was almost complete. Defendants could have presented this as a motion for summary judgment, and we would have a more developed record to guide our decision." *Id.* at 687. Under Eight Circuit precedent, the question is not the difficulty of the assignment, but to the contrary, the duty is to embrace the responsibility to determine at this stage of the proceedings whether a plaintiffs' suit should go forward considering the admonition that it must not continue, in order to protect public officials in performing their discretionary duties, unless a plaintiff can meet her or his responsibility under clearly established law. Here, Plaintiffs cannot show that their claimed statutory and constitutional rights were clearly established when they claim there was a violation of those claimed rights. Finally, given all of the facts most favorable to Plaintiffs, there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated any of Plaintiffs' claimed statutory or constitutional rights. *See Yowell v. Combs,* at 544 for the outline of the three elements. Care has been taken to state, in detail from

Plaintiffs' Second Amended Complaint, all of the respective claims alleged against all Individual Defendants. Individual Defendants are entitled to dismissal with prejudice of all claims for damages against them.

Plaintiffs correctly state that Plaintiffs have requested injunctive and declaratory relief against all Defendants. Qualified immunity cannot serve as a defense to an equitable claim. *See Williams v. Delo,* 49 F.3d 442, 445 (8th Cir. 1995).

The Court will reserve for future consideration Plaintiffs' Equal Protection claims and their Due Process claims. The case of Senty-Haugen v. Goodno, 462 F.3d 876 (8th Cir. 2006), is instructive in analyzing the issues before the Court. In granting a motion for summary judgment, the District Court considered Minnesota statutes pursuant to which Senty-Haugen was civilly committed as a "sexual psychopathic personality and sexually dangerous person" to the custody of the Minnesota Sex Offender Program. *Id.* at 879. Senty-Haugen sued the Minnesota Department of Human Services, other officials of the department and employees of the Offender Program, alleging violations of federal and state law for being placed in isolation, receiving inadequate individual attention and being retaliated against. Cited sections of the Minnesota law appear very similar to the Missouri statutes.

Since the Minnesota case was ruled on a summary judgment rather than a motion to dismiss, as here, the Minnesota court had the benefit of reference to "Program Procedures" by the Offender Program, "to govern patients committed to its custody." *Id.* at 880. At the summary judgment stage of this case, the Court may have before it such rules to compare the claimed proscribed conduct and procedures, to determine if constitutional violations are indicated. *Senty-*

*Haugen* teaches that "[n]either the Supreme Court nor this court has determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous persons under the *Mathews*[7] test." *Id* at 886. The Eighth Circuit recognizes that, "[a]s compared to a prison inmate, however, Senty-Haugen was entitled to 'more considerate treatment and conditions of confinement.'" (quoting *Youngberg v. Romeo,* 457 U.S. 307, 322 (1982)). The Court is not satisfied that it has before it at this time, sufficient information to make meaningful Due Process and Equal Protection Clause analyses.

## V. CONCLUSION

Plaintiffs' claims for damages against Individual Defendants on all Counts of Plaintiffs' Second Amended Complaint will be dismissed with prejudice. Plaintiffs' claims for declaratory and injunctive relief against all Defendants and Plaintiffs' Due Process and Equal Protection claims remain.

---

[7] *Mathews v. Eldridge,* 424 U.S. 319, 332-335 (1976).

Accordingly,

**IT IS ORDERED, ADJUDGED AND DECREED,** all claims by Plaintiffs against Individual Defendants for damages on all Counts are dismissed with prejudice. Plaintiffs' claims for declaratory and injunctive relief against all Defendants and Plaintiffs' Due Process and Equal Protection claims remain. A separate judgment page shall be prepared and submitted.

So Ordered this 9th Day of March, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE